UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 14-cr-00215-02 |
| VERSUS | JUDGE DRELL |
| JASE KIRK JR (02) | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Jase Kirk ("Defendant") was indicted for crimes based on his participation in a multi-defendant methamphetamine conspiracy. A search of his apartment found cash, digital scales, and a pistol. He pleaded guilty to possession with intent to distribute methamphetamine, benefited from a Government motion based on his cooperation, and was sentenced to 150 months, which was much less than the 240-month statutory minimum.

Before the court is Defendant's Motion to Vacate (Doc. 307) based on 28 U.S.C. § 2255. Defendant argues that he is entitled to relief because his attorney did not object at sentencing to a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1), which applies if the defendant's drug offense involved the possession of a dangerous weapon (including a firearm). The motion was referred to the undersigned (Doc. 335) for report and recommendation. The United States has filed a response (Doc. 352). Defendant was allowed until April 15 to file a reply, but none has been received as of this time. For the reasons that follow, it is recommended that the motion be denied.

**Relevant Facts**

There was no trial, so the available background facts are those found in the presentence investigation report ("PSR"). They reflect that Defendant's brother, Marcus, was the leader of a conspiracy to distribute methamphetamine in Louisiana. Marcus would obtain the methamphetamine from a source in California, who mailed it to Lecompte and Baton Rouge. Marcus and Defendant would receive the packages and distribute them to other distributors. Defendant would assist in collecting drug proceeds and sending money, sometimes using money orders, to the California source to purchase more methamphetamine. Agents had wiretaps on two phones that allowed them to monitor and confirm the transactions.

During the course of the investigation, at least five packages of methamphetamine were shipped from California to Louisiana. Three packages arrived in Lecompte. Two packages that contained a total of 1.67 kilograms of methamphetamine were mailed to Baton Rouge addresses that were associated with Defendant, and Defendant had the tracking numbers for the packages. Postal Inspectors intercepted those two packages. The same day the second package was seized, the FBI executed a search warrant on Defendant's Baton Rouge apartment. Marcus and two females were present. The agents seized a backpack full of $25,999 in cash, records of money orders from Defendant to individuals in California, four digital scales, and a stolen .380 pistol.

The agents found the .380 pistol in Defendant's bedroom. One month before the search, Defendant told his brother Marcus (on an intercepted call) that he had bought a .380 on a 9 mm frame. The gun found in Defendant's bedroom matched that description.

Defendant was charged in two counts of a multi-defendant, 10-count indictment arising out of the methamphetamine conspiracy. Count 1 charged him with conspiring to possess with intent to distribute 50 grams or more of methamphetamine, and Count 8 charged unlawful use of a communication facility. Doc. 1. This was not Defendant's first brush with federal law. He was convicted in 1999 of possession with intent to distribute cocaine base, and he was sentenced to several months in prison. U.S. v. Kirk, 1:99-10020-02. Based on that prior conviction, the Government filed an "Information to Establish Prior Conviction Pursuant to 21 U.S.C. § 851" that enhanced Defendant's potential sentence on the methamphetamine count. Because of his prior conviction, the potential sentence for Count 1 was increased to not less than 20 years (with a maximum of life) and at least 10 years of supervised release. Doc. 166, ¶ 3.

Defendant was represented by retained counsel, who negotiated a plea agreement. Defendant pleaded guilty to Count 1 and agreed to cooperate with the Government. The other count against him was dismissed. Docs. 173 & 175. Defendant acknowledged that the final determination of the Guidelines range could not be determined until the presentence investigation was completed, and the sentencing judge alone would decide what sentence to impose.

The PSR (Doc. 213) determined that Defendant had a base offense level of 32. PSR, ¶ 30. Two levels were then added because the agents found the .380 pistol in Defendant's bedroom, and the gun was linked to the conspiracy by the packages destined for Defendant

and his discussion of the pistol with his brother. PSR, ¶ 31. After a three-level reduction for acceptance-of-responsibility, Defendant's total offense level was 31. He was in criminal history category III. PSR, ¶ 46.

Defendant's combination of offense level and criminal history category would have resulted in a Guidelines range of 135 to 168 months; however, the 20-year mandatory-minimum required by statute meant that his Guideline range was 240 months. PSR, ¶ 46. Neither the defense nor the Government objected to the PSR. Doc. 214. Defendant stated at sentencing that he had reviewed the PSR with his attorney, and he did not have any questions about it. Doc. 351, p. 3.

Prior to sentencing, the Government filed a Motion for Sentencing Reduction pursuant to 18 U.S.C. § 3553(e). Doc. 194. It requested a below-the-statutory-maximum sentence that was within the of 135 to 168 months range that the Guidelines would apply if it were not for the statutory minimum. Doc. 194. Defense counsel pointed out that Defendant had readily accepted responsibility for his crime, had been polite and cooperative during the pretrial process, and had not insisted on filing meritless motions or "nitpicking" the PSR. The Court granted the motion and sentenced Defendant to a 150-month term of imprisonment plus five years of supervised release. Defense counsel stated that the sentence was "definitely without objection" and that he thought it was "wonderful" under the circumstances. Doc. 208, 210. Defendant did not appeal.

**Analysis**

Section 2D1.1 of the Sentencing Guidelines sets forth rules for assessing the offense level for a drug trafficking conspiracy. It provides in § 2D1.1(b)(1): "If a dangerous

weapon (including a firearm) was possessed, increase by 2 levels." This adjustment was made in Defendant's PSR. Defendant now argues that his counsel was ineffective for not objecting to the enhancement on the grounds there was no proof offered of a temporal or spatial relationship between the pistol and the count charged. There were, Defendant agues, no drugs found at the apartment nor evidence of drug transactions at the apartment. He states that the pistol was under his bed but was not used in a drug transaction. If the two-level dangerous-weapon enhancement were removed, the total offense level would drop to 29 and result in a Guidelines range of 108 to 135 months.

To establish ineffective assistance of counsel, Petitioner must demonstrate both deficient performance by his trial counsel and prejudice resulting from that deficiency. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). To show that his trial counsel's performance was deficient, he must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., 104 S.Ct. at 2064. To demonstrate prejudice from his trial counsel's deficient performance, he must show that his attorney's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Failure to establish either prong defeats the claim. Id.

Comment 11(A) to § 2D1.1(b)(1) explains that "[t]he enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet."

To show § 2D1.1(b)(1) is applicable, the Government has to show "that a temporal and spatial relationship existed between the weapon, the drug trafficking activity, and [Defendant]." United States v. Marquez, 685 F.3d 501, 507 (5th Cir. 2012). The Government meets this burden if it shows "that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." United States v. King, 773 F.3d 48, 53 (5th Cir. 2014). The Government's burden can also be satisfied if it establishes, by a preponderance of the evidence, that the defendant possessed a firearm "during conduct associated with the offense of conviction." Marquez, 685 F.3d at 508. The "adjustment is not limited to those scenarios in which the defendant possesses a dangerous weapon during the offense of conviction; the adjustment is also to be made when the defendant possesses a dangerous weapon during the course of related relevant conduct." United States v. Vital, 68 F.3d 114, 119 (5th Cir. 1995). If the Government satisfies its burden, then the defendant has the burden of showing that it is clearly improbable that the firearm was connected with the offense. King.; United States v. Taylor, 787 Fed. Appx. 238 (5th Cir. 2019).

The record reflects that the pistol had a sufficient relationship to the crime to warrant the enhancement. Defendant told his brother—the ringleader of the conspiracy—that he bought the pistol, it was found under Defendant's bed, and he has never disclaimed ownership of the pistol. The record does not indicate whether the pistol was loaded, but it was available to the three occupants of the apartment at the time agents executed the search warrant.[1] It was not locked away in a safe or other storage container. The weapon was present in a residence that was at the heart of a drug distribution conspiracy, surrounded by evidence (although no actual drugs) of that conspiracy and Defendant's role in it. There was ample indication that Defendant had, in connection with his apartment, handled financial matters related to the conspiracy and at least attempted to receive packages of drugs at the apartment. The Government showed that Defendant possessed the firearm during relevant conduct associated with the offense of conviction, and Defendant has not articulated any facts that could have met his burden of showing that it was "clearly improbable that the weapon was connected with the offense."

Defendant argues that no drugs were found at his residence, but that does not foreclose the enhancement. The Government helpfully cites Fifth Circuit decisions that have affirmed application of the enhancement in similar circumstances, where the weapon was found in the vicinity of drug trafficking but not necessarily together with any actual

---

[1] "For purposes of the § 2D1.1(b)(1) adjustment, . . . it is not material that the guns were not loaded; 2D1.1(b)(1) is an added punishment for drug offenders who heighten the danger of drug trafficking by possessing a dangerous weapon, and the mere presence of a gun, loaded or not, can escalate the danger." United States v. Jacquinot, 258 F.3d 423, 431 (5th Cir. 2001).

drugs. United States v. Jacobs, 797 Fed. Appx. 873 (5th Cir. 2020) (Government met its burden "by showing that Jacobs kept the firearm along with more than $7,000 in cash in a residence a DEA agent testified was Jacobs's 'business home.'"); United States v. Romans, 823 F.3d 299, 321-22 (5th Cir. 2016) (affirming the use of the enhancement when a pistol was found in a kitchen drawer along with a drug ledger and $24,000 in drug proceeds); United States v. Juluke, 426 F.3d 323, 328 (5th Cir. 2005) (affirming, when the "weapons at issue were found in the same home as the cash, and one was found in the same closet as a portion of the cash. The weapons were also on the same property that … Juluke had used to store heroin."); and United States v. Mueller, 902 F.2d 336, 345 (5th Cir. 1990) (weapon found in defendant's truck parked at a house that held a meth lab; "As Mueller was helping to run an illegal drug operation, it was not clearly improbable that the weapon was connected with the offense").

Other decisions that lend support include United States v. Puentes, 681 Fed. Appx. 341 (5th Cir. 2017) (enhancement affirmed even though unloaded pistol was stored in bedroom and the only meth found was in a detached shed; defendant was in continuing meth conspiracy); United States v. Montelongo, 539 Fed. Appx. 603, 607 (5th Cir. 2013) (gun in safe in supplier's bedroom warranted enhancement despite no drugs in the house; spatial connection because supplier negotiated deal that benefitted defendant from a vehicle parked in front of the house); and United States v. Lopez, 254 Fed. Appx. 349, 351 (5th Cir. 2007) (enhancement upheld where defendant mailed drugs and, two-years after last identified package was sent, his weapon was found next to an express mail package like the ones used previously).

A Section 2255 motion can be resolved without a hearing if the motion, files and records of the case conclusively show that Defendant is not entitled to relief. United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992). Conclusory allegations, unsubstantiated by evidence, do not warrant an evidentiary hearing. A defendant is entitled to a hearing on his motion only if he presents "independent indicia of the likely merit of [his] allegations." United States v. Reed, 719 F.3d 369, 373 (5th Cir. 2013).

Defendant has offered a brief assertion that his attorney was deficient for not objecting to the weapon enhancement. But the unchallenged facts in the record, together with applicable law discussed above, demonstrate that such an objection would have lacked merit. And "counsel is not required to make futile motions or objections." Garcia v. Stephens, 793 F.3d 513, 525 (5th Cir. 2015), quoting Koch v. Puckett, 907 F.2d 524, 527 (5th Cir.1990). Counsel was not deficient within the meaning of Strickland. He acted within the wide range of professional competence that may not be second guessed on collateral review. The ineffective assistance claim fails at the performance prong, so there is no need to address the prejudice requirement. Strickland, 104 S.Ct. at 2069.

Accordingly,

It is recommended that Defendant's Motion to Vacate (Doc. 307) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. The parties are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2255 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2255 Proceedings requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of April, 2020.

Mark L. Hornsby
U.S. Magistrate Judge